UNITED STATES OF AMERICA,

Plaintiff,

vs.

LITTLEHAWK EAGLEELK,

Defendant.

No. 25-CR-4005-LTS-KEM

**REPORT AND
RECOMMENDATION**

_____

Defendant Littlehawk Eagleelk is charged by indictment with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. 3. He moves to dismiss the indictment based on vindictive prosecution and collateral estoppel. Doc. 41. Alternatively, Defendant requests discovery on his vindictive prosecution claim. The Government filed a resistance (Doc. 44), and Defendant filed a reply (Doc. 45). I held a hearing on the motion on February 23, 2026.[1] Docs. 49, 59.

I recommend **denying** the motion.

## I. BACKGROUND

On March 22, 2020, Eagleelk and others entered a home in Sioux City and stole personal property and cash, utilizing a firearm during the incident. Doc. 41-1. Eagleelk was convicted of armed robbery in the second degree in the Iowa District Court for Woodbury County on January 26, 2021. Doc. 12. He was sentenced to an indeterminate term of incarceration not to exceed ten years, with a mandatory minimum prison sentence of five years, with credit for time served since his arrest on March 24, 2020. Doc. 57-

---

[1] Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Agent VanOtterloo and Defendant testified at the hearing.

6 at 2-3.

On June 11, 2020, Eagleelk was charged in federal court with three counts stemming from a different incident that occurred in a parking lot on March 22, 2020, alleging Eagleelk shot at an occupied vehicle with the intent to retaliate. No. 20-CR-4049-LTS-KEM (N.D. Iowa), Doc. 2. A second superseding indictment, returned on March 16, 2023, charged him with two counts of obstructing justice by retaliating against a witness, victim, or an informant in violation of 18 U.S.C. §§ 1513(a)(1)(B), (b)(2) and one count of possession, brandishing, and discharge of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(i), (ii), and (iii). *Id.*, Doc. 184. Eagleelk proceeded pro se through much of the case but opted to be represented by counsel on the day of trial so that he could testify. *Id.*, Doc. 41-1 at 2. He testified that on March 22, 2020, he had "a shotgun with me," "it was a 20-gauge shotgun," "I had it in my possession," "I did not go with the intention to – definitely didn't intend to go kill anybody," and he admitted to shooting at the vehicle as it backed up. *Id.*, Doc. 255, at 132-33, 163, 167. On May 12, 2023, a jury acquitted Eagleelk of all three counts. *Id.*, Doc. 251.

On February 20, 2025, the indictment in this case was returned, charging Eagleelk with possession of a firearm by a felon. Doc. 3. The charges stem from March 22, 2020, and are brought by the same prosecutor who prosecuted Eagleelk in No. 20-CR-4049-LTS-KEM. *Id.* Eagleelk states that "[t]he firearm used in the home robbery is the same alleged firearm involved in 20-CR-4049 and the same alleged in this Indictment." Doc. 41-1 at 2.

Eagleelk filed the pending motion to dismiss on December 23, 2025. Doc. 41. At the motion hearing, I admitted the following exhibits into evidence:

- Ex. A – detention hearing transcript (Docs. 51, 57-1);[2]
- Ex. B – grand jury transcript (Docs. 53, 54-1 (Ex. B-1));
- Ex. C – docket sheet, No. 20-CR-4049-LTS-KEM (Docs. 51-1, 57-2);
- Ex. D – May 25, 2023 email ordering trial transcript (Docs. 51-2, 57-3);
- Ex. E – December 19, 2025 email requesting discovery (Docs. 51-3, 57-4)
- Ex. F. – judgment, FECR107618, SMSM509965 (Docs. 56, 57-6);
- Ex. H – docket sheet, FEBR107618 (Doc. 58-1);
- Ex. 1 – detainer to state court, 25-CR-4005-LTS-KEM (Doc. 44-1);
- Ex. 2 – plea offer (Doc. 44-2)
- Ex. 3 – Report of Investigation (Doc. 44-3).

The following witnesses testified:

- Special Agent Micah Van Otterloo, ATF;[3]
- Defendant Littlehawk Eagleelk.

I also granted Eagleelk's motion (Doc. 55) to take judicial notice of the record from No. 20-CR-4049-LTS-KEM.

## II.    DISCUSSION

Eagleelk's motion to dismiss the indictment in this case requires the court to determine whether he has established that prosecutors engaged in a vindictive prosecution and whether collateral estoppel bars his prosecution on the current charge.

---

[2] The exhibits were refiled (Doc. 56-58) after the Clerk's Office notified counsel that the original exhibits (Doc. 51, 53-54) were filed without notices of filing exhibits and certificates of service. The exhibits skip from F to H (there is no exhibit G).

[3] Bureau of Alcohol, Tobacco, Firearms, and Explosives.

### A. *Vindictive Prosecution*

"A prosecutor's discretion to charge is very broad but cannot be based upon vindictiveness or exercised in retaliation for a defendant's exercise of a legal right."[4] "A prosecution designed solely to punish a defendant for exercising a valid legal right violates due process."[5] In light of the broad discretion given to prosecutors in carrying out their duties, a defendant bears a heavy burden to show that the prosecution was vindictive.[6] The Eighth Circuit has stated that courts have not "tak[en] away from prosecutors their traditional and proper discretion in deciding which of multiple possible charges against a defendant are to be prosecuted or whether they are all to be prosecuted at the same time."[7]

A defendant can demonstrate prosecutorial vindictiveness in two ways. First, a "defendant can establish prosecutorial vindictiveness through objective evidence that the prosecutor's decision to seek a more severe sentence was intended to punish the defendant for the exercise of a legal right."[8] Second, "[a]bsent such evidence, a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists."[9]

---

[4] *United States v. Rodgers,* 18 F.3d 1425, 1429 (8th Cir. 1994); *see also United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015) ("Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right.").

[5] *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004).

[6] *United States v. Robinson*, 809 F.3d 991, 1000 (8th Cir. 2016); *Leathers*, 354 F.3d at 961 ("The defendant's evidentiary burden is a heavy one, and we are mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes.").

[7] *United States v. Partyka*, 561 F.2d 118, 124 (8th Cir. 1977).

[8] *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005); *United States v. Beede*, 974 F.2d 948, 951–52 (8th Cir. 1992).

[9] *United States v. Chappell,* 779 F.3d 872, 879 (8th Cir. 2015) (emphasis in original) (internal citations omitted); *see also United States v. Carstens*, 747 F. Supp. 528, 531 (N.D. Iowa 1989), *aff'd,* 938 F.2d 185 (8th Cir. 1991) ("the [Supreme Court] *Goodwin* case reaffirms the 'realistic likelihood of vindictiveness' standard); *United States v. Terrell*, 220 F. Supp. 3d 941, 946 (N.D. Iowa 2016) ("A defendant who lacks direct evidence of a vindictive motive can establish a

In determining whether the presumption of vindictiveness applies, we examine "the prosecutor's actions in the context of the entire proceedings."[10] "A presumption does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness."[11] Courts have ruled that no presumption of vindictiveness arises when a prosecutor files a superseding indictment with additional charges after a defendant opts not to plead guilty and forces the government to prove its case; when the federal government prosecutes a defendant after he or she refuses to plead guilty in state court; when the government adds additional charges after a mistrial; or when the government adds new charges based on "independent acts" within the "same spree of activity."[12] The

---

rebuttable presumption of vindictiveness by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness.").

[10] *Chappell*, 779 F.3d at 880 (citation omitted).

[11] *Campbell*, 410 F.3d at 462. *See also United States v. Goodwin*, 457 U.S. 368, 384 (1982) ("[A] mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule.").

[12] *See Goodwin*, 457 U.S. 368 (no presumption arises when defendant does not plead to a misdemeanor and new prosecutor reindicts on a felony); *Bordenkircher v. Hayes,* 434 U.S. 357 (1978) (due process is not violated by a prosecutor carrying out a threat to reindict on a more serious charge if the defendant does not plead guilty to the original charge, as long as there is probable cause to prosecute the more serious charge); *United States v. Dexter*, No. 21-CR-00040, 2022 WL 2965993, at *8–9 (D. Minn. July 27, 2022); *United States v. Kriens*, 270 F.3d 597, 602 (8th Cir. 2001) ("[defendant] does not benefit from such a presumption in this case simply because the federal government prosecuted him after he refused to plead guilty in state court"); *Rodgers,* 18 F.3d at 1427-31 (no vindictiveness when Government filed two superseding indictments adding firearm, aiding-and-abetting, and distribution charges following a mistrial on conspiracy charge and acquittal on drug possession charges; "acquittals of the possession with intent to distribute charges in the first indictment did not involve the exercise of a right that would give rise to a presumption of vindictive motive on the part of the government"); *Robinson*, 809 F.3d at 1001 (no vindictiveness when false-statement count was added after a mistrial; "although the false-statement count arose from the same general nucleus of facts referenced in the earlier indictment that resulted in a mistrial, the false-statement count was based on Robinson's separate and independent act of lying to the FBI about those facts."); *United States v. Sheridan*, 464 F. Supp. 2d 847, 849–52 (N.D. Iowa 2006) ("Defendant argues that the presumption of vindictiveness arises because the government charged him with a slightly

Supreme Court concluded a defendant failed to raise a presumption when the government increased the charges against the defendant shortly after he asserted his right to a jury trial because "the only evidence [the defendant was] able to marshal in support of his allegation of vindictiveness [was] that the additional charge was brought at a point in time after his exercise of a protected legal right."[13]  The Eighth Circuit has stated that the "presumption of vindictiveness arises only when the prosecutor chooses to bring a more serious charge against a defendant in the second trial."[14]  In addition, "[a] mere allegation the government was prosecuting defendant because it was upset over losing at trial is not enough to establish vindictiveness."[15]

"Timing and sequence alone cannot establish a presumption of vindictiveness in the Eighth Circuit."[16]  In *United States v. Williams*, the Eighth Circuit rejected defendant's vindictiveness argument that relied on timing, noting that defendant's "primary, if only, argument on appeal is that the timing of the superseding indictment

---

different firearms crime after he was acquitted of a crime involving the same underlying facts. This is not one of the 'rare instances' in which the rebuttable presumption arises").

[13] *Goodwin*, 457 U.S. at 382 n.15.

[14] *United States v. Peoples*, 360 F.3d 892, 896 (8th Cir. 2004).

[15] *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004).

[16] *United States v. Guetersloh*, No. 4:22CR0338, 2023 WL 2986721, at *6 (E.D. Mo. Jan. 23, 2023), *report and recommendation adopted,* 2023 WL 2628989 (E.D. Mo. Mar. 25, 2023) (finding no presumption when the Government increased charges after defendant opposed severance and asserted speedy trial rights); *see also* **United States v. Stroud**, 673 F.3d 854, 859–60 (8th Cir. 2012) ("we agree with the magistrate judge and the district court that the time sequence in this case is insufficient to raise a presumption of vindictiveness."); **United States v. Kuhnel**, No. CR 17-158, 2019 WL 6769417, at *8 (D. Minn. Dec. 12, 2019) (denying motion to dismiss for vindictive prosecution; Defendant "argues that the United States filed the Superseding Indictment against him to punish him for his decision to proceed pro se and take his case to trial. [Defendant] presents no objective evidence and instead appears to rely primarily on the timing of the Superseding Indictment in an attempt to create a presumption of vindictive prosecution. (*Id.*) However, 'timing alone is insufficient to trigger the presumption of vindictiveness.'").

demonstrates vindictiveness, but timing alone is insufficient to trigger the presumption of vindictiveness."[17] The court further stated that the defendant "provides no evidence—aside from the timing—to show the context of the proceedings present a reasonable likelihood of vindictiveness, and thus he fails to meet his heavy burden to establish prosecutorial vindictiveness."[18] The Eighth Circuit has rejected "unsupported assertions that timing alone 'gives rise to a reasonable likelihood of vindictiveness' and 'the presumption applies whenever the prosecution has knowledge of the facts essential to the other charges at the time of the original indictment, trial, and conviction.'"[19]

Even if a defendant establishes a realistic likelihood of vindictiveness, the prosecution has an opportunity to rebut the presumption and proffer legitimate, objective reasons for its conduct.[20] As such, "[a]lthough a rebuttable presumption of vindictiveness may arise when prosecutors increase the number or severity of charges, 'if any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created.'"[21] Thus, "[t]here can be no prosecutorial vindictiveness if the prosecutor revised the charge because of newly discovered evidence or some objective reason other than to punish the defendant for exercising his legal rights."[22]

---

[17] 793 F.3d at 963-64.

[18] *Id.*

[19] *Chappell*, 779 F.3d at 881 (quoting *Goodwin*, 457 U.S. at 384) (cleaned up).

[20] *Goodwin*, 457 U.S. at 374.

[21] *United States v. Punelli*, 892 F.2d 1364, 1371 (8th Cir. 1990) (quoting *United States v. Krezdorn,* 718 F.2d 1360, 1365 (5th Cir. 1983) (en banc)) (cleaned up).

[22] *Campbell*, 410 F.3d at 462.

### *1. Dismissal*

Eagleelk argues the Government is vindictively prosecuting him in this case as retribution for proceeding pro se and successfully avoiding a conviction in his prior case. He states that he "asserted all his rights, including self-representation and to testify" in 20-CR-4049-LTS-KEM and that, because he was successful in gaining acquittal in the prior case, the prosecutor is seeking to punish him. He argues that the prosecutor deliberately waited years to indict in the current case until Eagleelk had almost completed his state robbery sentence and that this timing evidences a vindictive intent to punish him. In particular, Defendant notes that Fairchild ordered the trial transcript from the prior case on or about May 25, 2023, and argues this provides an inference that he was considering new charges against Eagleelk at that time. Eagleelk points out that Fairchild then waited for two years to bring the pending case, which coincides with when Eagleelk was completing the mandatory portion of his five-year sentence for robbery. Eagleelk states that "[t]he present charging decision, based on the timing and circumstances surrounding the prior acquittal, Eagleelk's pro se litigation therein, his election to testify, the timing of Indictment around his State sentence all support vindictiveness under both theories." Doc. 41-1 at 5. During the motion hearing, Eagleelk stated that he discussed pleading guilty to a charge of prohibited person in possession of the firearm during the prosecution of 20-CR-4049-LTS-KEM, and thus the Government was aware of the potential for the charge approximately five years before the indictment in this case.

Here, Eagleelk does not identify any objective evidence of prosecutorial vindictiveness. The Eighth Circuit has stated that "[a]n example of objective evidence of a vindictive motive would be a prosecutor's statement that he or she is bringing a new charge in order to dissuade the defendant from exercising his or her legal rights."[23] A prosecutor's opposition to a motion for a new trial and a delay in filing a superseding

---

[23] *Campbell*, 410 F.3d at 462.

indictment do "not rise to the level of objective evidence of prosecutorial vindictiveness."[24] Here, the circumstances relied upon by Eagleelk do not constitute objective evidence of a vindictive motive on the part of the Government.

Turning to whether the circumstances warrant a presumption of vindictiveness, Defendant has a stronger case based on the significant delay in filing the indictment in this case. The Government advances the argument that prosecutors have complete discretion in the timing and execution of their charging decisions, and that the timing of the indictment in this case therefore cannot raise a presumption of vindictiveness. In addition, the Government responds that a nexus investigation[25] was begun after the conclusion of the trial in 20-CR-4049-LTS-KEM, pointing out that the special agent did not author a nexus report until October 2, 2024. *See* Doc. 44 at 3, 5. The Government disputes Eagleelk's contention that discovery from the prior case is the same as in the instant case, arguing that ATF reports from the nexus investigation and Eagleelk's trial testimony from the prior case constitute new evidence. The Government asserts that Eagleelk's "description of the weapon and ammunition, their function, and his abandoning of the weapon, all were important to the nexus determination." Doc. 44 at 5.

At the motion hearing, ATF Special Agent Van Otterloo testified that he was not contacted at any time between 2020 and 2022 to conduct the nexus investigation. Rather, he began his investigation in December 2023, and it was largely complete in January

---

[24] *Id.* at 461-62.

[25] Satisfying the interstate commerce element of § 922(g) requires only "the minimal nexus that the firearm ha[s] been, at some time, in interstate commerce." *United States v. Carter*, 270 F.3d 731, 735 (8th Cir. 2001) (quoting *Scarborough v. United States,* 431 U.S. 563, 575 (1977)).

2024. The nexus reports demonstrate that in December 2023, S/A Van Otterloo began his nexus investigation, first meeting with Sioux City detectives and Eagleelk and then reviewing police reports, surveillance video, photographs, and sworn testimony from 20-CR-4049-LTS-KEM. Doc. 44-3. The earliest nexus report, dated January 9, 2024, notes that the "discharged shotgun cartridge casing was not recovered" but concludes "[t]he yellow hulled 20 gauge shot shell, loaded with birdshot, as described in a proffer interview with Eagleelk, consistent with damage found on the BMW, consistent with the video of the shooting event, and Eagleelk's statements under oath, meets the definition of ammunition . . . and was not manufactured in the State of Iowa and therefore traveled in or affected interstate and/or foreign commerce." Doc. 44-3 at 2-8. The report quotes the following statement from the proffer report:

> AUSA Fairchild asked him to describe the shotgun. EAGLEELK states it was a pump action 20 gauge and there were no rounds in the gun . . . [but] stated that there were probably around 5-6 rounds in the bag. He described them to be birdshot rounds and yellow in color. AUSA Fairchild asked if he knew what brand the shotgun was? EAGLEELK stated he didn't know the brand of gun.

*Id.* at 6. Similarly, S/A Van Otterloo authored a report dated January 9, 2024, that details his nexus investigation and concludes that "[t]he 20 gauge, pump action shotgun, as described in a proffer interview with Eagleelk, consistent with damage found on the BMW, consistent with the video of the shooting event, and Eagleelk's statemens under oath, meets the definition of a firearm . . . and was not manufactured in the State of Iowa and therefore traveled in or affected interstate and/or foreign commerce." Doc. 44-3 at 9-17. The October 2, 2024 reports for the firearm and ammunition, relied upon by the Government for when the agent authored his report, include identical analysis to the January 9, 2024 versions, except the October 2, 2024 reports exclude the paragraph

quoting the proffer interview report.[26]  *Compare* Doc. 44-3 at 2-8 and 22-27.  S/A Van Otterloo did not explain why he continued filing additional reports after the initial January 9, 2024 versions.

The Government argues that the nexus investigation was unusual because the firearm was never recovered and that it had to rely on Eagleelk's testimony describing the firearm from his trial in the prior case.  Eagleelk's proffer, however, appears to have included the same substantive information about the firearm and ammunition as his trial testimony.  At the motion hearing, the Government relied heavily on trial testimony being sworn testimony to justify its need to wait for the trial testimony, rather than relying the proffer.[27]

Even assuming the Government's argument is true that the unrecovered nature of the firearm necessitated waiting until the trial in 20-CR-2049-LTS-KEM was completed on May 12, 2023, the Government does not explain why it waited until December 2023 to request a nexus investigation.[28]  Nor does the Government explain the delay between the initial January 2024 nexus reports and the February 2025 return of the indictment, given that there does not appear to be additional analysis or evidence in the October 2024

---

[26] The report does not make clear when the proffer interview occurred, but according to Eagleelk's testimony at the motion hearing, the interview occurred prior to his trial in 20-CR-4049-LTS-KEM.

[27] The Government disputes that it waited until Eagleelk's state sentence expired to pursue this case, noting that he was read his detainer on February 21, 2025, but did not demand a speedy trial and thus remained in custody.  Doc. 44 at 5.  The Government further notes that it began plea negotiations with Eagleelk on July 8, 2025, while he was still in state custody.

[28] The Government relies on *United States v. Rodgers*, but in that case "although the evidence necessary to charge the gun count was available and within the knowledge of the law enforcement officers, the prosecutors were not actually aware that the gun was found loaded and in the house until it was too late to seek a superseding indictment prior to the first trial.  While this might indicate some lack of preparation on the part of the prosecution, it does not indicate a reasonable likelihood of a vindictive motive."  18 F.3d at 1431.  That case is thus distinguishable from the instant case, where prosecutors were aware of the relevant facts during the prosecution of the prior case.

reports.[29]  Defendant finds an indicia of vindictiveness from the Government ordering the transcript right away, but it seems more concerning that the Government delayed seven months to request the nexus investigation and more so that the Government delayed an additional 13 months after the initial nexus reports to file an indictment in this case.

I find, while prosecutors do retain discretion in their charging decisions and the timing of those decisions, the delay in this case is concerning.  Even assuming the Government is correct that the nexus investigation could not be completed until the sworn testimony by Defendant in the prior case was complete, there does not appear to be a reasonable explanation for the 21 months' between the conclusion of the prior case and the filing of the indictment when it appears the nexus investigation was substantively completed in a handful of weeks (which included two major holidays).  Despite these concerns, Eagleelk fails to demonstrate a reasonable likelihood that prosecutors only prosecuted him to punish the defendant for exercising his legal rights rather than to punish him for the illegally possessing a firearm.[30]  The timing of the indictment may be suspect as it relates to the completion of his state sentence, but the charges themselves do not appear suspect.  In view of authority explicitly stating that timing alone cannot form the

---

[29] It is possible that the prosecutor did not receive the initial report in January 2024.  S/A Van Otterloo did not testify as to when he first delivered reports to prosecutors, and the Government does not set forth when ATF first provided reports to prosecutors.

[30] Eagleelk acknowledges the authority that states that the presumption only arises only when the prosecutor brings a more serious charge.  He argues that he could have faced a life sentence in 20-CR-4049 and this prosecution also exposes him to a life sentence.  He contends that "the Government's position in this case is to seek the maximum consecutive sentence to the prior State robbery charge and potentially life, as Eagleelk may be an armed career criminal."  The Government responds that it is inaccurate to claim Eagleelk faces the same punishment because in the prior case he faced life imprisonment for Count 3, consecutive to any obstruction sentence and that, as the instant indictment does not contain an Armed Career Criminal allegation, he faces a possible maximum sentence of 10 years' imprisonment in the instant case.  *Id.*  This may serve as another basis to conclude there is no presumption of vindictiveness, but the court need not so decide.

Case 5:25-cr-04005-LTS-KEM     Document 60     Filed 03/17/26     Page 12 of 20

basis for a presumption of vindictiveness, I find that the prosecution's delay in filing the charges in this case does not create a presumption of vindictiveness.[31]

Against that backdrop, I conclude that the relevant circumstances fail to support a reasonable likelihood of prosecutorial vindictiveness. Therefore, Eagleelk fails to demonstrate this is one of the rare cases that contains a presumption of vindictiveness.

### 2. Discovery

Alternatively, Eagleelk argues that he should be granted discovery on the Government's charging decision. Eagleelk states that he noticed the Government of his request for "all pre-indictment memorandums, emails, notes, and correspondence with investigating agency related to this case" and "any related documents on filing the current charge during the prior prosecution" of 20-CR-4049-LTS-KEM. Doc. 41-1 at 9. Eagleelk asks the court to compel the Government's response to his request for documents.

"To merit further discovery or an evidentiary hearing on a vindictive prosecution claim, a defendant must allege sufficient facts to take the question past the frivolous state and raise reasonable doubt as to the prosecutor's purpose."[32] Courts have noted that the Eighth Circuit has applied the selective prosecution's threshold showing test to obtain discovery to vindictive prosecution claims.[33] Under that test, discovery is warranted only

---

[31] *See, e.g.*, **Williams**, 793 F.3d at 963-64 (concluding timing of superseding indictment alone is insufficient to meet heavy burden of establishing presumption of vindictiveness).

[32] **United States v. Long**, No. 6:23-CR-03063, 2025 WL 3722015, at *3–6 (W.D. Mo. Dec. 23, 2025) ("By failing to show a reasonable likelihood of vindictiveness exists, Defendant has failed to make a threshold showing of a vindictive prosecution claim. Therefore, the undersigned declines to grant Defendant's requests for discovery and an evidentiary hearing.").

[33] **United States v. Von**, No. CR No. 07-224, 2007 WL 3313450, at *3 (D. Minn. Nov. 6, 2007); *see also* **United States v. Thymaras**, 5:14-CR-50063, Doc. 111 at 10, 14 (D.S.D. Jan. 12, 2016) ("Discovery to support such a [vindictive prosecution] claim is subject to a rigorous

when defendants make a threshold or colorable showing of the elements of the defense of vindictive prosecution.[34] Such a showing "would first require some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements."[35] A court in this circuit denied a defendant's request for discovery on vindictiveness, because, even if the court assumed the prosecutor harbored animus against the defendant, he failed to make a threshold showing that "'the defendant would not have been prosecuted except for the animus' toward the Defendant for exercising a legal right."[36]

None of the Eighth Circuit cases cited by Defendant grant discovery on the issue of vindictive prosecution. Rather, they all address a defendant's request for discovery on selective prosecution, and the majority deny that request.[37] For cases addressing discovery on vindictive prosecution, he relies on two cases arising out the Sixth Circuit: *United States v. Abrego-Garcia* and *United States v. Adams*. Both cases are distinguishable based on statements of officials indicating the prosecutions were

---

standard."; defendant "is only entitled to discovery if there is some evidence tending to show the essential elements of the vindictive prosecution claim.").

[34] *See United States v. Aanerud*, 893 F.2d 956, 961 (8th Cir. 1990); *see also United States v. Cammisano*, 546 F.2d 238, 241 (8th Cir. 1976) ("Before a defendant will be allowed to subpoena documentary evidence related to a selective prosecution defense, the party must first show a 'colorable basis' for the claim.").

[35] *Cammisano*, 546 F.2d at 241 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211-12 (2nd Cir. 1974)).

[36] *Von*, 2007 WL 3313450, at *3-4.

[37] *See Aanerud*, 893 F.2d at 961 (affirming denial of discovery on selective prosecution defense because "appellants failed to make a threshold showing of either of the elements necessary for a selective prosecution defense."); *Hirsch*, 360 F.3d at 864 (affirming denial of discovery on selective prosecution and vindictive prosecution claims because defendant failed to "produce at least some credible showing" of the elements of selective or vindictive prosecution). *Cf. Cammisano*, 546 F.2d at 241-42 (affirming grant of in camera inspection of certain government documents, but concluding that portions of the discovery were overbroad).

undertaken for vindictive reasons. *Abrego-Garcia* included "remarkable" public statements by executive branch officials that could constitute direct evidence of vindictiveness and thus demonstrated "a realistic likelihood of vindictiveness entitl[ing] him to discovery and a hearing."[38] Moreover, the very public *Abrego-Garcia* case placed "a significant burden on and embarrassment to the Executive Branch," leading to a likelihood of establishing presumptive vindictiveness.[39] *Adams* presented the "rare" case where defendant provided quotes from a special agent who allegedly told multiple people that "his job was to find [defendant] guilty of something, no matter how small" and affidavits of former agents indicating that the criminal prosecution was unusual or, having seen confidential memoranda, that it was their belief that it was instigated as revenge.[40] Moreover, the judge noted that "taxpayers who underreport their income and then voluntarily amend their returns and pay the deficiency have not heretofore been subjected to prosecution in the Western District of Tennessee—at least not within the memory of the district judge, whose tenure goes back to 1966" and "prosecutions for perjury have not heretofore been instituted in respect of testimony given in civil proceedings."[41]

Eagleelk asserts he should be allowed discovery because he has shown "some actual vindictiveness based on the suspect timing [of] ordering of the transcript, pretrial statements, and filing of the Indictment at or near [his] state prison release." Doc. 41-1 at 10. Prosecutions for being a felon in possession of a firearm are routine, and the Government has a legitimate interest in charging Eagleelk with this offense after his acquittal in the prior case. As discussed above, the delay in filing the charge while

---

[38] *United States v. Abrego-Garcia*, 802 F. Supp. 3d 1055, 1061 (M.D. Tenn. 2025).

[39] *Id.* at 1062.

[40] *United States v. Adams*, 870 F.2d 1140, 1141-44 (6th Cir. 1989) ("Upon review we conclude that this is one of those rare cases where the defendants are entitled to discovery on the issue of whether the government's decision to prosecute was tainted by improper motivation.")

[41] *Id.* at 1145-46.

Eagleelk served his state sentence does not make a colorable showing that he was only prosecuted based on animus for him asserting his rights. This case does not rise to the level of *Abrego-Garcia* or *Adams*.

Eagleelk has not identified, nor have I found, caselaw allowing discovery of documents such as those requested herein, when the defendant did not have some objective evidence supporting vindictiveness, relying solely on timing and circumstances akin to the present case. In a case denying discovery of internal government memoranda, another court in this circuit refused to allow the discovery of government documents relating to charging decisions or plea negotiations and noted that "the defendant did not present, and the court has not found any cases in which a defendant was granted discovery of these protected materials for a vindictive prosecution claim."[42]

I find Eagleelk has failed to show he is entitled to discovery on his vindictive prosecution claim.

### B.     *Double Jeopardy/Collateral Estoppel*

In addition, Eagleelk argues that the indictment in the present case subjects him to successive punishments in violation of the Fifth Amendment because it is barred by collateral estoppel. Doc. 41 at 1; Doc. 41-1 at 12. Eagleelk cites to the Fifth Amendment's prohibition on double jeopardy, prohibiting multiple prosecutions for the same offense. However, Eagleelk acknowledges that two offenses are not the same for purposes of double jeopardy if one requires proof of a fact that that other does not and that Count 3 of case number 20-CR-4049-LTS-KEM has elements distinct from the

---

[42] *United States v. Glenn*, No. 5:14-CR-50115, 2017 WL 318791, at *1 (D.S.D. Jan. 23, 2017). *See also **United States v. Goulding***, 26 F.3d 656, 662 (7th Cir. 1994) ("to the extent that Goulding sought to discover internal government documents, the district court correctly held that Federal Rule of Criminal Procedure 16(a)(2) precluded the production of the Internal Revenue Service's criminal referral documents").

charge in this case.[43]  I agree with Eagleelk that the current charge of being a felon in possession of a firearm has elements distinct from the charge of possession of a firearm in furtherance of a crime of violence in the previous case.[44]  Thus, double jeopardy is not implicated.[45]

The Supreme Court also has incorporated the doctrine of collateral estoppel into the Fifth Amendment's guarantee against double jeopardy.[46]  The collateral estoppel doctrine provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in

---

[43] Doc. 41-1 at 13 (discussing **Blockburger v. United States**, 284 U.S. 299, 304 (1932)).

[44] Possession of a firearm in furtherance of a crime of violence in the previous case required the following elements:

> One, . . . the defendant committed the first "retaliating against a witness" crime, as charged in Count 1 of the Indictment.
> Two, the defendant knowingly possessed a firearm in furtherance of that crime. . . .
> This means the government must prove that the defendant possessed the firearm with the intent that it advance, assist or help commit the crime, but the government need not prove that the firearm actually did so.

20-CR-4049-LTS-KEM, Doc. 245-1 (jury instructions).  Meanwhile, the elements of the being a felon on possession of a firearm under § 922(g)(1) are: "(1) previous conviction of a crime punishable by a term of imprisonment exceeding one year, (2) knowing possession of a firearm, and (3) the firearm was in or affecting interstate commerce."  **United States v. Garcia-Hernandez**, 803 F.3d 994, 996 (8th Cir. 2015).  Thus, the prior case's Count 3 requires elements that the current charge does not, including commission of the crime of retaliating against a witness and possession of the firearm with the intent that it advance, assist or help commit the retaliation crime.  Likewise, the current charge contains elements that the prior Count 3 does not, including having a previous conviction of a crime punishable by over a year imprisonment.

[45] *See* **Bassett v. United States**, No. 4:15CV01800, 2016 WL 5941938, at *8 (E.D. Mo. Oct. 13, 2016) ("The § 924(c) charge in Count III requires proof that Petitioner possessed a firearm in furtherance of a crime of violence, an element which Count IV does not require. Count IV (felon in possession) requires proof that Petitioner was a convicted felon prior to his possession of a firearm, which a § 924(c) charge does not. As a result, double jeopardy does not exist in this case.").

[46] **Ashe v. Swenson**, 397 U.S. 436, 444-45 (1970).

any future lawsuit."[47]  However, "[a] fact previously determined in a criminal case is not an 'ultimate fact' unless it was necessarily determined by the jury against the government and, in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to convict."[48]  The defendant bears the burden of showing that the first jury necessarily decided the issue he seeks to foreclose from consideration at a second trial.[49]  "It is, of course, difficult in most cases to ascertain from a jury's general verdict exactly what facts were necessarily found as a predicate to that verdict."[50]  As the Supreme Court has stated, "[w]here a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."[51]

Here, Eagleelk argues that collateral estoppel applies because the issue of possession has already been determined:  that "[p]ossession was the central issue of count 3 in 20-CR-4049" and that "[t]he jury returned an acquittal on Count 3, wherein possession of a firearm was a determinative fact of the offense."  Doc. 41-1 at 14.  He states that "[b]ecause possession was absolutely necessary to a guilty verdict in both Count 3 in the prior prosecution and to this Indictment, the prosecution should be foreclosed here."  *Id.*

---

[47] *Id.* at 443.

[48] *Prince v. Lockhart*, 971 F.2d 118, 123 (8th Cir. 1992).

[49] *United States v. Bearden*, 265 F.3d 732, 735 (8th Cir. 2001).

[50] *United States v. Baugus*, 761 F.2d 506, 508 (8th Cir. 1985) (quoting *United States v. Brown*, 547 F.2d 438, 441 (8th Cir. 1977)).

[51] *Ashe*, 397 U.S. at 444 (citation and quotation omitted); *see also United States v. Howe*, 590 F.3d 552, 556 (8th Cir. 2009).

The jury acquitted Eagleelk of possession of a firearm in furtherance of a crime of violence in the prior case. However, that does not necessarily mean that the jury decided he was not in possession of the firearm. There are numerous elements to possession of a firearm in furtherance of a crime of violence. As such, just because the possession element was necessary for a guilty verdict does not necessarily mean that the jury decided the possession element in his favor when acquitting him. As detailed above, Eagleelk testified at trial that he was in possession of the shotgun.[52] What he disputed in his testimony was that he was trying to kill or retaliate against the victim. Thus, the jury not only could have, but likely did, acquit him of the charge based on a lack of evidence that he shot at the car in furtherance of a crime of violence.

Thus, I find that as a matter of law, collateral estoppel does not apply.

### III.    CONCLUSION

I recommend **DENYING** Eagleelk's motion to dismiss (Doc. 41).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections.[53] Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the

---

[52] Similarly, Defendant's opening statement and closing statement conceded his involvement with the shooting but argued that he didn't aim when he fired, there was no evidence he knew who was in the vehicle, and there was no intent to kill. *See* 20-CR-4049-LTS-KEM, Doc. 253 at 202; Doc. 256 at 26-34.

[53] **LCrR 59**.

objections.[54]  Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[55]

**DATED** March 17, 2026.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[54] *See* **Fed. R. Crim. P. 59**.

[55] *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).