# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

LITTLEHAWK EAGLEELK,

      Defendant.

No.  CR25-4005-LTS-KEM

**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION**

## *I.      INTRODUCTION*

This matter is before me on a Report and Recommendation (Doc. 60) filed by Chief United States Magistrate Judge Kelly K.E. Mahoney.  Judge Mahoney recommends that I deny defendant Littlehawk Eagleelk's motion (Doc. 41) to dismiss the indictment based on vindictive prosecution and collateral estoppel, or alternatively, to order discovery on his vindictive prosecution claim.  Eagleelk and the Government have each filed objections (Docs. 66, 67).

## *II.     BACKGROUND*

Judge Mahoney provided the following relevant background in her R&R:

> On March 22, 2020, Eagleelk and others entered a home in Sioux City and stole personal property and cash, utilizing a firearm during the incident.  Doc. 41-1.  Eagleelk was convicted of [sic] robbery[1] in the second degree in the Iowa District Court for Woodbury County on January 26, 2021.  Doc. 12.  He was sentenced to an indeterminate term of incarceration not to exceed ten years, with a mandatory minimum prison sentence of five years, with credit for time served since his arrest on March 24, 2020.  Doc. 57-6 at 2-3.

---

[1] The Government clarifies in its objection (Doc. 67) that Eagleelk was convicted in state court of robbery in the second degree rather than armed robbery.

On June 11, 2020, Eagleelk was charged in federal court with three counts stemming from a different incident that occurred in a parking lot on March 22, 2020, alleging Eagleelk shot at an occupied vehicle with the intent to retaliate. No. 20-CR-4049-LTS-KEM (N.D. Iowa), Doc. 2. A second superseding indictment, returned on March 16, 2023, charged him with two counts of obstructing justice by retaliating against a witness, victim, or an informant in violation of 18 U.S.C. §§ 1513(a)(1)(B), (b)(2) and one count of possession, brandishing, and discharge of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(i), (ii), and (iii). *Id.*, Doc. 184. Eagleelk proceeded pro se through much of the case but opted to be represented by counsel on the day of trial so that he could testify. *Id.*, Doc. 41-1 at 2. He testified that on March 22, 2020, he had "a shotgun with me," "it was a 20-gauge shotgun," "I had it in my possession," "I did not go with the intention to – definitely didn't intend to go kill anybody," and he admitted to shooting at the vehicle as it backed up. *Id.*, Doc. 255, at 132-33, 163, 167. On May 12, 2023, a jury acquitted Eagleelk of all three counts. *Id.*, Doc. 251.

On February 20, 2025, the indictment in this case was returned, charging Eagleelk with possession of a firearm by a felon. Doc. 3. The charges stem from March 22, 2020, and are brought by the same prosecutor who prosecuted Eagleelk in No. 20-CR-4049-LTS-KEM. *Id.* Eagleelk states that "[t]he firearm used in the home robbery is the same alleged firearm involved in 20-CR-4049 and the same alleged in this Indictment." Doc. 41-1 at 2.

Doc. 60 at 1-2.

Judge Mahoney issued her R&R (Doc. 60) on March 17, 2026, and recommends denying the motion. Trial is scheduled to begin July 13, 2026.

### III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may

> accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV. DISCUSSION

Eagleelk objects to the R&R's failure to attribute facts beyond timing as presumptive evidence of the Government's vindictiveness. He also argues he is entitled to discovery related to the Government's charging decision because no other route exists to obtain evidence of actual vindictiveness or other relevant facts. Finally, he argues the R&R erred in failing to find the Indictment is collaterally estopped.

3

### A. Other Evidence of Vindictiveness

Eagleelk argues the R&R failed to take into account the following additional facts to support vindictiveness: (1) the Government's actual knowledge of Eagleelk's willingness to plead guilty to a superseding indictment for felon in possession following a proffer session in his prior case; (2) the fact that the Government knew the relevant information based on Eagleelk's proffer, which was identical to the trial testimony, and waited years before generating a nexus report; (3) the Government's actions post-indictment related to a plea agreement and seeking pretrial detention and (4) the fact that Eagleelk asserted his right to proceed pro se and testify in his own defense in the prior case.

While the R&R primarily focused on timing, it considered several of these other factors. *See* Doc. 60 at 8 ("During the motion hearing, Eagleelk stated that he discussed pleading guilty to a charge of prohibited person in possession of the firearm during the prosecution of 20-CR-4049-LTS-KEM, and thus the Government was aware of the potential for the charge approximately five years before the indictment in this case."); *Id.* at 9 ("Eagleelk's proffer, however, appears to have included the same substantive information about the firearm and ammunition as his trial testimony."); *Id.* at 12 ("it seems more concerning that the Government delayed seven months to request the nexus investigation and more so that the Government delayed an additional 13 months after the initial nexus reports to file an indictment in this case"); *Id.* at 8 (acknowledging Eagleelk's argument that the Government is vindictively prosecuting him as retribution for proceeding pro se (and asserting his right to testify) and successfully avoiding a conviction in his prior case). Judge Mahoney concluded that Eagleelk failed to identify any objective evidence of prosecutorial vindictiveness. *Id.* at 8. Whether the circumstances warranted a presumption of vindictiveness, she considered the above evidence, focusing primarily on the Government's significant delay in filing the indictment. *Id.* at 9-12. While Judge Mahoney expressed concern about the Government's delay, she ultimately concluded Eagleelk failed to demonstrate a

4

reasonable likelihood that he was prosecuted only to punish him for exercising his legal rights rather than to punish him for the illegal possession of a firearm.[2] *Id.* at 12.

Eagleelk argues that the R&R should have accounted for the above circumstances as independent facts of vindictiveness. He argues that the post-acquittal conduct of the Government should not be given the deference that is assigned to pretrial decisions. In particular, he argues the R&R failed to note that a post-trial charge should be viewed as more likely vindictive than one made pretrial. Doc. 66 at 6 (citing *United States v. Goodwin*, 457 U.S. 368, 381 (1982)).

While Eagleelk categorizes the above circumstances as additional independent facts indicative of vindictiveness, they still relate to timing. The Government's knowledge of Eagleelk's willingness to plead guilty to a superseding indictment for felon in possession of a firearm following his proffer session is purportedly vindictive because the Government did not pursue that option after the proffer session but waited until after trial, and after Eagleelk had served his state sentence. The generation of the nexus report is purportedly vindictive because the Government waited to generate it until after trial, even though the Government arguably had all the relevant information after Eagleelk's proffer. The R&R discussed each of these factors, which is why Judge Mahoney concluded the delay in this case was "concerning." Doc. 60 at 12. While Eagleelk's

---

[2] The R&R did not address arguments that the Government's post-indictment actions related to a possible plea agreement and seeking pretrial detention support vindictiveness. This is likely because Eagleelk did not raise those arguments in his motion. *See* Doc. 41. The R&R did address the Government's proposed Rule 11(c)(1)(C) plea agreement (Doc. 44-2), which the Government used to demonstrate that it did not wait until Eagleelk was out of state custody before bringing the indictment because Eagleelk was purportedly still in state custody at the time of this proposed plea agreement. *See* Doc. 60 at 11, n.27. In his reply and his objections, Eagleelk argues the proposed plea agreement bolsters his argument of vindictiveness because the Government seeks to prevent 5G1.3 credit for time served due to relevant conduct. Doc. 45 at 3; Doc. 66 at 4; *see also* Doc. 62 at 72. The Government's response is that Eagleelk has not been punished for the firearm. *Id.* at 73. In any event, the Government's plea proposal and detention positions were made post-indictment and are less relevant as to whether the decision to prosecute itself was vindictive.

decision to proceed pro se and testify at his trial do not relate to timing, Judge Mahoney still considered those facts as part of Eagleelk's argument of vindictiveness, concluding that he failed to demonstrate a reasonable likelihood that he was prosecuted only to punish him for exercising his legal rights. *See* Doc. 60 at 8.

Based on my de novo review, I agree with Judge Mahoney that Eagleelk has failed to come forward with objective evidence of prosecutorial vindictiveness or demonstrate a reasonable likelihood that he was prosecuted only to punish him for exercising his legal rights, rather than to punish him for illegal possession of a firearm. With regard to the legal rights Eagleelk identifies (proceeding pro se and testifying in his own defense), I note these cannot be divorced from the fact that Eagleelk also obtained an acquittal. In other words, Eagleelk does not argue vindictiveness based solely on asserting the right to testify in his own defense or proceeding pro se, but doing so while also obtaining an acquittal. *See* Doc. 66 at 3 ("Because the Government cannot appeal an acquittal, its ordering of the transcript only days after the acquittal is evidence of a presumptive vindictiveness, seeking to find ways to re-indict and punish him for the acquittal, pro se litigation, and successful use of testimony in his own defense."); *id.* at 4 ("All this evidences more than suspect timing but rather the Government seeking an end around justification for its punishment of Eagleelk's prior successful litigation and asserting his right to testify in his own defense."); *id.* at 6 ("The use of this testimony is not new evidence but rather punishment of a defendant who asserted his 5th Amendment right to testify in his defense and achieve an acquittal therefrom to have it improperly utilized as grounds for a 'new charge.'"); *id.* at 6 ("This case is borne of out retaliation for a defendant obtaining an acquittal, one where Eagleelk had perpetuated his zealous pro se defense.").

The Eighth Circuit has held that there is no presumption of vindictiveness "when the government chooses to indict a defendant on individual acts that arose out of the same nucleus of facts which resulted in an earlier acquittal." *United States v. Robinson*, 809 F.3d 991, 1001 (8th Cir. 2016) (quoting *United States v. Rodgers*, 18 F.3d 1425, 1430

6

(8th Cir. 1994)).  *See also United States v. Esposito*, 968 F.2d 300, 306 (3d Cir. 1992) ("We will not apply a presumption of vindictiveness to a subsequent criminal case where the basis for that case is justified by the evidence and does not put the defendant twice in jeopardy.").[3]  Because Eagleelk's exercise of certain legal rights cannot be separated from the acquittal, I cannot say that the Government's subsequent decision to prosecute him for being a felon in possession of a firearm was a result of an impermissible reason (defendant's exercise of valid legal rights) or a permissible one (bringing an additional charge for which there is probable cause and does not subject the defendant to double jeopardy).  *See United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015) ("Vindictive prosecution occurs when a prosecutor seeks to punish a defendant *solely* for exercising a valid legal right.") (emphasis added); *United States v. Scott*, 610 F.3d 1009, 1017 (8th Cir. 2010) ("A mere allegation the government was prosecuting defendant because it was upset over losing at trial is not enough to establish vindictiveness.").

As for the other factors, including Eagleelk's prior plea offer, the information disclosed in the proffer, and the delayed generation of the nexus report, I find these all relate to timing and/or sequence, which, as Judge Mahoney noted, is insufficient alone to form the basis for a presumption of vindictiveness.  Doc. 60 at 12-13 (citing *e.g.*, *Williams*, 793 F.3d at 963-64).  While Eagleelk raises various aspects of the timing/sequence of events that raise concerns, I cannot find a presumption of vindictiveness from these circumstances because they all relate to timing/sequence.  *See Williams*, 793 F.3d at 963 ("Williams provides no evidence – aside from the timing – to show the context of the proceedings present a reasonable likelihood of vindictiveness, and thus he fails to meet his heavy burden to establish prosecutorial vindictiveness.").

The R&R sufficiently addressed the relevant facts in determining if Eagleelk was able to demonstrate a reasonable likelihood that he was prosecuted solely to punish him

---

[3] The Eighth Circuit adopted *Esposito*'s reasoning "as [its] own" in *Rodgers*, 18 F.3d at 1430.

for exercising his legal rights.  For the reasons cited therein, and the additional reasons addressed above, I agree with Judge Mahoney that he has failed to meet that burden.[4]

### B.       *Discovery of the Government's Charging Decision*

Eagleelk argues he has made a sufficient showing of the Government's animus to at least justify discovery.[5]  He argues this animus is demonstrated by the Government's admission that it should have previously taken him up on a plea to felon in possession of a firearm, its knowledge and agreement it could have charged him before, its desire to make plea offers forbidding any relevant conduct credit under § 5G1.3 of the United States Sentencing Guidelines, and the presumptive nature of animus from Eagleelk's prior pro se litigation.  He also argues the Government's tenor of cross-examination during the motion to dismiss hearing shows a distinct animus.  *See* Doc. 66 at 7 (citing Doc. 62 at 46-48).  With regard to the R&R, he notes the reference to the routine nature of firearm possession cases bolsters his argument as to why there is animus because the prosecutor knew of this charge, and how to supersede an indictment, yet chose to pocket the charge and not bring it immediately after the acquittal, but only after the expiration of the state sentence to extract the maximum penalty.

After discussing the cases cited by Eagleelk, Judge Mahoney concluded:

> Eagleelk has not identified, nor have I found, caselaw allowing discovery of documents such as those requested herein, when the defendant did not have some objective evidence supporting vindictiveness, relying solely on

---

[4] As Judge Mahoney observed, there may be an additional reason as to why a vindictive prosecution claim fails under these circumstances.  *See* Doc. 60 at 12, n.30 (noting that a presumption of vindictiveness arises only when the prosecutor brings a more serious charge and questioning whether the instant charge meets that standard given that Eagleelk was exposed to a life sentence in the prior case and a maximum of 10 years' imprisonment, with no Armed Career Criminal allegation, in this case).

[5] As noted in the R&R, Eagleelk seeks "all pre-indictment memorandums, emails, notes, and correspondence with investigating agency related to this case" and "any related documents on filing the current charge during the prior prosecution" of 20-CR-4049-LTS-KEM.  Doc. 60 at 13 (quoting Doc. 41-1 at 9).

timing and circumstances akin to the present case. In a case denying discovery of internal government memoranda, another court in this circuit refused to allow the discovery of government documents relating to charging decisions or plea negotiations and noted that 'the defendant did not present, and the court has not found any cases in which a defendant was granted discovery of these protected materials for a vindictive prosecution claim.

Doc. 60 at 16 (citing *United States v. Glenn*, No. 5:14-CR-50115, 2017 WL 318791, at *1 (D.S.D. Jan. 23, 2017). Thus, she concluded Eagleelk failed to show he was entitled to discovery on his vindictive prosecution claim. *Id.*

Based on my de novo review, I agree that Eagleelk is not entitled to discovery on his vindictive prosecution claim. He cannot show that the Government chose to charge him solely for exercising a legal right as opposed to pursuing another charge that was supported by the facts in the prior case, given that he was acquitted of the prior charges. His other evidence is related to timing or sequence of events that alone cannot be a basis for a vindictive prosecution claim. The arguments in his objections regarding the routine nature of firearm possession charges and the Government's delay in pursuing the charge also relate to timing. Like Judge Mahoney, I am aware of no legal authority authorizing the type of discovery Eagleelk seeks under these circumstances. As such, his request to compel discovery in support of his vindictive prosecution claim is denied.

## C. *Collateral Estoppel*

Eagleelk argues he was previously subjected to jeopardy on the issue of possession. He thus contends that there was a final termination of jeopardy with the acquittal, which was a general verdict, meaning that no one can glean the jury's ultimate determination on the issue of possession.

Judge Mahoney concluded that the jury's acquittal of Eagleelk on the charge of possessing a firearm in furtherance of a crime of violence in the prior case did not necessarily mean that the jury decided he was not in possession of the firearm. Doc. 60

9

at 19. She noted there are numerous elements to possession of a firearm in furtherance of a crime of violence and "just because the possession element was necessary for a guilty verdict does not necessarily mean that the jury decided the possession element in his favor when acquitting him." *Id.* Indeed, she noted that Eagleelk had testified at trial that he was in possession of a shotgun and what he disputed in his testimony was that he was trying to kill or retaliate against the victim. *Id.* Therefore, Judge Mahoney reasoned the jury likely acquitted him based on a lack of evidence that he shot at the car in furtherance of a crime of violence. *Id.* As such, she found collateral estoppel did not apply. *Id.*

Based on my de novo review, I agree with Judge Mahoney's analysis on this issue. While she speculated as to the meaning of the jury's verdict, that is entirely the point – we do not know the jury's ultimate determination on the issue of possession in the prior case. Eagleelk's argument that "jeopardy" (or finality) attaches to the issue of possession, even though the jury rendered a general verdict, is not supported by the case law. Collateral estoppel "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119 (2009). To determine what the jury necessarily decided, courts "examine the record of a prior proceeding, . . . and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970). As Judge Mahoney observed, possession of a firearm was not necessarily decided in the prior case as the jury could have (and likely did) find one of the other elements had not been met. As such, Eagleelk's acquittal in the prior case does not collaterally estop a prosecution of possession of a firearm by a felon.

10

## V. CONCLUSION

For the reasons set forth herein:

1.     Eagleelk's objections (Doc. 66) to the R&R are **overruled**.

2.     I **accept** the Report and Recommendation (Doc. 60) without modification**.**

3.     Pursuant to Judge Mahoney's recommendation, Eagleelk's motion (Doc. 41) to dismiss is **denied**.

**IT IS SO ORDERED** this 1st day of May, 2026.

_____
Leonard T. Strand
United States District Judge

11